**John E. SHULER, Plaintiff,**

v.

**Bruce BABBITT, Secretary, Department of Interior; John G. Rogers, Acting Director, U.S. Fish and Wildlife Service; Department of the Interior; U.S. Fish and Wildlife Service; and United States of America, Defendants.**

**No. CV–96–110–GF.**

United States District Court,
D. Montana,
Great Falls Division.

March 17, 1998.

Steven Ruffatto, Crowley, Haughey, Hanson, Toole & Dietrich, Billings, William P. Pendley, Todd S. Welch, Mountain States Legal Foundation, Denver, CO, Steven J. Lechner, Lechner Law Office, Westminster, CO, for plaintiff.

George F. Darragh, Jr., Office of the U.S. Attorney, Great Falls, Joseph Perella, Kenneth E. Kellner, U.S. Department of Justice Wildlife & Marine Resources, Washington, DC, for defendants.

## MEMORANDUM AND ORDER

HATFIELD, Senior District Judge.

Plaintiff, John E. Shuler, instituted the above-entitled action seeking judicial review, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, of a decision by the Ad Hoc Board of Appeals, Department of the Interior, assessing a $5,000 civil penalty against Shuler for killing a grizzly bear in violation of the Endangered Species Act ("ESA"), 16 U.S.C. § § 1531 *et seq.* Presently before the court are the parties' cross-motions for summary judgment, pursuant to Fed. R.Civ.P. 56. Having reviewed the record herein, together with the parties' briefs in support of their respective positions, the court is prepared to rule.

## BACKGROUND

In 1986, John Shuler and his wife purchased a ranch located six miles west of Dupuyer, Montana. In August and September of 1989, grizzly bears attacked the Shulers' flock of sheep on four different occasions. Each attack was reported to the proper authorities—Michael J. Madel, bear management specialist for the Montana Department of Fish, Wildlife and Parks, and Kenneth Wheeler, animal damage control officer for the United States Department of the Interior, Fish and Wildlife Service ("FWS"). Attempts to capture and remove the bears were unsuccessful.

On September 9, 1989, at approximately 10:30 p.m., Mrs. Shuler noticed the sheep, illuminated by three large security lights, were circling nervously in the bedding pen. Mrs. Shuler also heard what "sounded like something crunching bones" nearby, and observed the family dog would not leave the porch. Shortly thereafter, Mr. Shuler glanced out a window and saw something running along the fence line south of his house, heading toward the bedding pen and his sheep. Shuler grabbed a flashlight and a rifle and ran outside, barefoot and in his underwear, to the bedding pen "to keep [the sheep] from getting eaten up."

When he reached the bedding pen, Shuler testified "the sheep just exploded, and they all raced up to the north corner of the bedding pen." To prevent the sheep from hurting themselves by piling on one another, Shuler climbed over the fence to the bedding pen and walked toward the center of the flock. As he moved toward the center of the bedding pen, a heavy snowfall began, making it very difficult to see. Shuler testified that, at this point, "the sheep were boiling all around [him]," when three grizzly bears emerged from the darkness and sprinted past him, approximately thirty feet away, heading towards the north end of the bedding pen. Star-

tled, Shuler dropped his flashlight and fired a shot at the bears.

Immediately thereafter, the sheep started to "flow into" Shuler from the north end of the bedding pen. Suddenly, a fourth grizzly bear rose up on its hind legs amongst the sheep, approximately 30 feet away from Shuler. Shuler fired a shot at the bear's throat. The bear fell to the ground, let out a roar, and then got back up. Shuler then lost sight of the bear in the snow and darkness.

Shuler rushed toward the sheep creep in an effort to seek protection from the bear.[1] As he waited next to the sheep creep, Shuler heard the "dancer board" on the gate in the wind break rattle, indicating either the sheep had hit the gate or the bear was leaving the bedding pen by climbing over the gate. Shuler waited by the sheep creep for a minute until he thought it was safe, and then retrieved his flashlight.

Shuler then walked to the spot where the grizzly bear had stood when he shot it. Shuler found blood stains in the snow and followed the blood trail to the location where the bear had climbed over the gate in the wind break.

Shuler then picked up the trail of the three other grizzly bears, and followed it south to where it left the bedding pen. After ensuring that all four grizzly bears had left the bedding pen and that his sheep were relatively safe, Shuler returned to his home and got dressed. Thereafter, Shuler drove out to look for the bear's carcass, but was forced to discontinue his search due to the heavy snowfall and poor visibility.

Shuler resumed his search at first light the next morning. Shuler testified he un-dertook his search to determine whether he had killed the bear, or whether he needed to warn his neighbors and the authorities that a wounded grizzly bear was in the area.

Shuler drove his truck into a pasture, let his dog out of the truck, and proceeded to a pasture just north of Sheep Creek. The dog disappeared into a low marshy area by the creek. Shuler stopped his truck and, armed with his rifle, began walking towards where his dog was pointing. Shuler did not see anything and, as he turned to return to his truck, Shuler noticed a grizzly bear, approximately 150 feet away, sitting on its haunches.

Shuler testified the bear then began "loping in [Shuler's] direction at an angle .... He was running in a little bit sideways and his right shoulder was throwing up. There was something wrong with the way he was tracking." Shuler fired at the bear from a distance of approximately 125 feet, but missed. Shuler fired again, and the second shot caused the bear to roar and fall to the ground. The bear returned to its feet and came toward Shuler. Shuler fired a third shot from a distance of fifty feet, which knocked the bear to the ground. Shuler then approached the bear and, realizing that it was expiring, fired a final shot to kill the bear. Shuler then returned home and reported the incident to the FWS.

On May 8, 1990, the FWS served Shuler with a Notice of Violation, charging him with "taking"[2] a grizzly bear in violation of 16 U.S.C. § 1538(a)(1)(B)[3], and proposing a civil penalty of $7,000.00. On June 20, 1990, Shuler filed a petition for relief from the assessment, asserting he had acted in

---

**1.** The sheep creep is an A-frame structure about 75 feet long and 4 feet high. It has slots on its east side so that lambs can go inside and be protected from the wind.

**2.** Under the ESA, the term "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

**3.** Section 1538(a)(1)(B) of Title 16, United States Code, provide in part:

... with respect to any endangered species of fish or wildlife...it is unlawful for any person subject to the jurisdiction of the United States to take any such species within the United States ....

self-defense. On April 19, 1991, the FWS rejected Shuler's argument and assessed a civil penalty in the amount of $7,000.00.

On May 16, 1991, Shuler filed a request for hearing with the Hearings Division, Office of Hearings and Appeals, United States Department of Interior. On September 22 and 23, 1992, a hearing was held before an Administrative Law Judge, during which evidence was introduced and testimony taken. On March 11, 1993, the ALJ issued his decision, finding Shuler did not have a good faith belief that he was acting in self-defense.

> In seeking out the bear, he [Shuler] unjustifiably, unreasonably, and intentionally placed himself in dangerous circumstances, circumstances upon which he may not now rely to establish a good faith belief that he was acting in self-defense.
>
> Mr. Shuler's choice of twice placing himself in the zone of imminent danger and then shooting the bear cannot be condoned by labeling it self-defense. If such actions are condoned, the wildlife protection purposes of the ESA will be defeated. Any rancher wishing to protect his livestock from grizzlies or other listed species could initiate or provoke dangerous confrontations in order to justify killing the species.

*FWS v. Shuler*, Docket No. Denver 91–2, slip op. at 10 (1993). The ALJ did reduce the civil penalty, in light of mitigating circumstances, to $4,000.

On April 5, 1993, Shuler filed a Notice of Request for Appeal with the Ad Hoc Board of Appeals, Department of the Interior ("the Board"). On July 23, 1996, the Board issued its decision, holding Shuler's actions, in leaving his house to protect his sheep and to search for the bear were reasonably calculated to lead to a conflict and, having provoked the conflict, Shuler did not act in self-defense in taking the bear on the morning of September 10, 1989.[4] In addition, the Board held that Shuler's civil penalty was appropriately in-

creased to $5,000.00. On October 9, 1996, Shuler instituted the above-entitled action, seeking judicial review of the Board's decision.

## DISCUSSION

The ESA was enacted "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). Because grizzly bears are a "threatened species," the ESA provides a framework for their protection, imposing criminal and civil sanctions for prohibited conduct. *See,* 16 U.S.C. § § 1538(a)(1)(G); 1540(b)(1); 50 C.F.R. § 17.40(b)(1)(i). For example, the ESA provides that any person who knowingly violates any regulations pertaining to a threatened species may be assessed a civil penalty of not more than $12,000.00 for each violation. *See,* 16 U.S.C. § 1540(a)(1).

In the case *sub judice,* Shuler asserts the Board erred in rejecting his claim of self-defense. The ESA allows a person to "take" a grizzly bear when that person is under a "good faith belief" that he is acting to protect himself from bodily harm.

> No civil penalty shall be imposed if it can be shown by a preponderance of the evidence that the defendant committed an act based on a good faith belief that he was acting to protect himself or herself, a member of his or her family, or any other individual from bodily harm from any endangered or threatened species.

16 U.S.C. § 1540(a)(3). *See also,* 50 C.F.R. §§ 17.21(c)(2); 17.40(b)(1)(i)(B).

The Board, in rejecting Shuler's claim of self defense, concluded Shuler was not in imminent danger of bodily harm on the evening of September 9, 1989, nor on the following morning. Moreover, the Board concluded Shuler, as the aggressor in the

---

4. The Board's decision expressly noted the FWS, with respect to the events which occurred on the evening of September 9, 1989, conceded Shuler acted in self-defense.

conflict, was precluded from claiming self-defense with respect to the conflict on the morning of September 10, 1989.

Upon review, the court concludes the Board's determination, *i.e.*, that a person must be in imminent or immediate danger of bodily harm in order to avail himself of a claim of self-defense, is consistent with the language and goals of the ESA. Nevertheless, the court, after carefully considering the record herein, is compelled to conclude the facts of record reveal Shuler was in "imminent" danger on the morning of September 10, 1989, when the grizzly bear charged toward him. The Board's conclusion to the contrary is not supported by substantial evidence.

Moreover, the court concludes the facts of record do not support the Board's determination that Shuler's actions provoked the conflict, thereby precluding him from claiming self-defense. Shuler was not the aggressor with respect to the conflict at issue—he had no intention of provoking the grizzly bear nor did he, in fact, provoke the bear. On the morning of September 10, 1989, Shuler was simply trying to ascertain whether a wounded grizzly bear posed a danger to everyone in the area. Under the facts presented, the Board's conclusion that Shuler provoked the conflict is not supported by substantial evidence. The government's argument to the contrary is unpersuasive.

### CONCLUSION

Therefore, for the reasons set forth herein, the court concludes the Board's decision to assess a $5,000.00 civil penalty against Shuler is appropriately REVERSED. Accordingly, the court concludes the Shuler's motion for summary judgment is hereby GRANTED. Likewise, the government's motion for summary judgment is hereby DENIED.

IT IS SO ORDERED.